Mr. Drew Pritt 3204 Fair Park Boulevard, Apt. 1S Little Rock, Arkansas 72204
Dear Mr. Pritt:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. You have previously submitted ballot titles for similar measures, which I and my predecessor have rejected for various reasons. See Ark. Ops. Att`y Gen. Nos. 2007-183, 2007-172 and 2005-303. Your proposed popular name and ballot title are as follows:
 Popular Name
AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS HOPE EDUCATION LOTTERY COMMISSION AND INVESTING IT WITH POWER TO LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES, CONDUCT AND REGULATE GAMBLING GAMES AT CASINOS OWNED BY THE COMMISSION, AND A STATEWIDE LOTTERY OPERATED BY THE COMMISSION OR ITS CONTRACTORS TO FUND SCHOLARSHIPS AND GRANTS FOR ARKANSAS CITIZENS ENROLLED IN CERTIFIED TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES IN ARKANSAS, REPEALING AMENDMENT 84 TO THE ARKANSAS CONSTITUTION, AND PROVIDING FOR THE STRUCTURE OF, THE INITIAL APPOINTMENT OF COMMISSIONERS OF, AND SUBSEQUENT ELECTIONS OF THE MEMBERS OF THE ARKANSAS HOPE EDUCATION LOTTERY COMMISSION *Page 2 
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS HOPE EDUCATION LOTTERY COMMISSION AND INVESTING IT WITH POWER TO LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES, CONDUCT AND REGULATE GAMBLING GAMES AT CASINOS OWNED BY THE COMMISSION, AND A STATEWIDE LOTTERY OPERATED BY THE COMMISSION OR ITS CONTRACTORS TO FUND SCHOLARSHIPS AND GRANTS FOR ARKANSAS CITIZENS ENROLLED IN CERTIFIED TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES IN ARKANSAS; PROCEEDS FROM THIS LOTTERY OR OTHER GAMING NAMED ABOVE ARE TO BE USED SOLELY TO PAY THE OPERATING EXPENSES OF LOTTERIES, INCLUDING ALL PRIZES, AND TO FUND OR PROVIDE FOR SCHOLARSHIPS AND GRANTS TO CITIZENS OF THIS STATE ENROLLED IN PUBLIC AND PRIVATE NONPROFIT TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES LOCATED WITHIN THE STATE THAT ARE CERTIFIED ACCORDING TO CRITERIA ESTABLISHED BY THE ARKANSAS HOPE EDUCATION LOTTERY COMMISSION; EMPOWERING THE ARKANSAS HOPE LOTTERY COMMISSION TO ESTABLISH CRITERIA TO DETERMINE WHO IS ELIGIBLE TO RECEIVE THE SCHOLARSHIPS AND GRANTS; DECLARING THAT LOTTERY PROCEEDS SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; DECLARING LOTTERY PROCEEDS TO BE CASH FUNDS HELD IN TRUST WITH THE ARKANSAS STATE TREASURY TO BE MANAGED AND MAINTAINED BY THE ARKANSAS STATE TREASURER`S OFFICE; REQUIRING LOTTERY PROCEEDS REMAINING AFTER PAYMENT OF OPERATING EXPENSES AND PRIZES TO SUPPLEMENT, NOT SUPPLANT, NON-LOTTERY EDUCATIONAL RESOURCES; DECLARING THAT THIS AMENDMENT DOES REPEAL AMENDMENT 84 TO THE ARKANSAS CONSTITUTION; PROVIDING FOR THE *Page 3 
APPOINTMENT BY THE GOVERNOR OF FOUR (4) INITIAL COMMISSIONERS TO THE ARKANSAS HOPE EDUCATION LOTTERY COMMISSION, ONE FROM EACH CONGRESSIONAL DISTRICT, AND THE APPOINTMENT OF THE LIEUTENANT GOVERNOR WHO SHALL SERVE AS CHAIR OF THE ARKANSAS HOPE EDUCATION LOTTERY COMMISSION; AUTHORIZING THE GOVERNOR TO APPOINT THESE FOUR COMMISSIONERS UNTIL THE NEXT REGULARLY SCHEDULED GENERAL ELECTION AT WHICH TIME THESE COMMISSION MEMBERS WOULD BE REQUIRED TO BE ELECTED BY A PLURALITY OF VOTES CAST BY THE REGISTERED VOTERS FROM EACH CONGRESSIONAL DISTRICT THEY WISH TO REPRESENT FOR FOUR YEAR TERMS; AUTHORIZING THE CHAIR TO VOTE IN CASE OF A TIE IN ISSUES BEFORE THE ARKANSAS HOPE EDUCATION LOTTERY COMMISSION; IN THE EVENT OF THE NEED FOR FILLING OF VACANCIES OF ARKANSAS HOPE EDUCATION LOTTERY COMMISSION MEMBERS UNTIL THE NEXT REGULARLY SCHEDULED GENERAL ELECTION THE CHAIR IS AUTHORIZED TO MAKE SUCH APPOINTMENTS
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has been given noauthority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless *Page 4 
the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434,29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119
(1996); and Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of the proposed amendment or act. See Arkansas Women'sPolitical Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, *Page 5 
or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v.McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial.Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v.Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following non-exhaustive list of ambiguities:
 1. As an initial matter, I must note an obvious disconnect between the text of your proposed amendment and the proposed popular name and ballot title you have submitted to summarize that text. The text of the amendment you propose to place in the Arkansas Constitution creates a lottery commission to "enact laws" to "establish, operate, and regulate state lotteries. . . ." It also repeals existing Amendment 84, which authorizes charitable bingo and raffles under certain circumstances. Your proposed popular name and ballot title, however, in summarizing this text, are much broader and include references to the proposed lottery commission licensing and regulating charitable bingo and raffles and "gambling games at casinos." The actual text of your measure does not mention these activities. I thus cannot determine your intention in this regard, or certify a popular name and ballot title for your measure in light of this discrepancy. *Page 6 
 2. Section (a) of your proposed amendment repeals Arkansas Constitution, art. 19, § 14, which currently prohibits the State from authorizing lotteries. Your proposed amendment then goes on to create the lottery commission discussed above and authorizes it to enact laws to establish, operate and regulate state lotteries for the sole purpose of funding operational expenses, prizes and the educational purposes listed. It appears, however, in light of the complete repeal of the lottery prohibition in art. 19, § 14, that your measure, if adopted, would leave the General Assembly unconstrained and able to enact laws authorizing any and all other forms of gambling it chooses. Presumably the General Assembly could utilize the ensuing revenues for purposes other than those listed in your measure. As I have noted to you before, the General Assembly possesses all legislative power not denied by the United States or Arkansas Constitutions. Op. Att`y Gen. Opinion 2005-303 at 5 ("the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Constitution"). Your measure does not deny the General Assembly any power in this regard. I am uncertain if this is indeed your intention. This is a major departure from current law and this fact would have to be made abundantly clear to the voters in any ballot title certified for your measure.
 3. Subsection (a) of your proposed amendment states as follows: "The creation of the Arkansas Hope Lottery Commission to enact laws to establish, operate, and regulate state lotteries for the purposes of funding scholarships and grants to citizens in the State of Arkansas attending any certified public or private two-year or four year college and university." This language is ambiguous in several respects. As an initial matter, this phrase is difficult to construe because it is not a complete sentence. In addition, the reference to the Commission "enact[ing] laws" is confusing. *Page 7 
The legislative power of the state is currently vested in the General Assembly — it is the entity currently authorized to "enact laws." See Arkansas Constitution, art. 5, § 1 (also discussing the people's right to adopt initiative and referendum measures). State agencies and commissions are often empowered to adopt rules and regulations, but it is confusing to refer to such a commission as having the power to "enact laws." I am thus uncertain how to summarize this point in a ballot title for your measure. Moreover, this language, authorizing the Commission to "enact laws" to establish, operate, and regulate state lotteries, is unclear as to whether the Commission will itself operate the lotteries, or whether it will be authorized to adopt laws providing for the operation of lotteries by private parties or contractors. This ambiguity is not resolved by your characterization, in your proposed popular name and ballot title, of the lottery being "operated by the Commission or its contractors. . . ." Although your popular name and ballot title address this point, the actual text of your amendment is not clear in this regard. The mere summarization of this point in a ballot title for your measure will not operate to write it into law. Two final points should be made with regard to subsection (a) of your measure. First, the term "state lotteries," may lead to varying interpretations. I discussed a similar concern in Op. Att`y Gen. 2007-268. Second, your measure is unclear as to whether it implicitly denies the General Assembly any power to adopt laws concerning the Arkansas Hope Education Lottery or the Commission you describe. The inapplicability of the appropriation process and the extensive power given to the Commission as opposed to the General Assembly may raise a negative implication in this regard. My predecessor discussed a similar problem in one of your previous submissions. See Op. Att`y Gen. 2005-303.
 4. Section (c) of your measure states that "Lottery proceeds . . . are specifically declared to be cash funds held in trust with the Arkansas State Treasurer's Office. . . ." Your proposed *Page 8 
ballot title summarizes this point as "declaring lottery proceeds to be cash funds held in trust with the Arkansas State Treasury. . . ." This language is ambiguous and as a consequence I cannot summarize it in a certified ballot title for your measure. "Cash funds," by definition, are those held outside the state treasury or the purview of the State Treasurer. See A.C.A. § 19-4-801 (Supp. 2007) (defining "cash funds" as meaning "all moneys, negotiable instruments, certificates of indebtedness, stocks, and bonds held by or owned by any state agency which are not on deposit with or in the trust of the State Treasurer"). The purpose of this segregation is typically to exclude the funds from the necessity of an appropriation. See, e.g., Arkansas Constitution, 5 § 29 and Gipson v. Ingram, 215 Ark. 812, 223 S.W.2d 595
(1949).
 5. Section (e) of your proposed measure repeals Amendment 84 regarding charitable bingo and raffles. As noted above, however, the actual text of your proposed amendment itself makes no provision for the operation of charitable bingo and raffles. Although the language of your proposed popular name and ballot title refer to the Commission's power in this regard, your amendment does not, and as a consequence that aspect of your measure would not become law if your measure is adopted. Because of this disconnect, I cannot certify a popular name and ballot title for your measure.
 6. Sections (f) and (g) of your measure address the appointment of Commissioners. Several issues are left unclear by these provisions and again, there is a discrepancy between your text and proposed ballot title in this regard. For example, although your proposed ballot title refers to the four initial commissioners being appointed "one from each congressional district," the text of your measure contains no such requirement. Although your proposed ballot title refers to the elected commissioners serving four-year terms, the text of your measure contains no such requirement. Also *Page 9 
unclear under your measure is whether the initial, appointed members will be authorized to run in the ensuing election. Your text is apparently silent on this point, although the wording may imply such ability. See § (g) ("Setting the terms of the appointed commissioners to run until the next regularly scheduled general election at which time commission members would have to be elected. . . ."). (Emphasis added.) See also, your proposed ballot title (stating that the initial commissioners are appointed "until the next regularly scheduled general election at which time these commission members would be required to be elected . . ."). (Emphasis added). An issue arises in this regard in light of the potential applicability of existing Arkansas Constitution, Amendment 29, which governs the filing of vacancies in certain elective offices and the ability of appointees to succeed themselves.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my *Page 10 
statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1